**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

Jacob Andrew Wade,

Plaintiff,

Civil Action No: 1:26-cv-02489

v.

Experian Information Solutions, Inc., Equifax Information Services LLC, NewRez LLC, and Toyota Motor Credit Corporation,

Defendants.

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

**COMPLAINT SEEKING DAMAGES FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**

## INTRODUCTION

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.

2. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

3. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

4. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

5. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

6. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting.

7. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

8. Jacob Wade ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of Defendants Experian Information Solutions, Inc. ("Experian"), Equifax Information Services LLC ("Equifax"), NewRez LLC ("NewRez"), and Toyota Motor Credit Corporation ("Toyota") (jointly as "Defendants"), regarding erroneous reports of derogatory credit information and Defendants' failure to investigate the same.

9. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

10. Unless otherwise stated, all the conduct engaged in by Defendants took place in Indiana.

11. Defendants committed each of these violations knowingly, willfully, and intentionally, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

12. Plaintiff does not allege that any state court judgment was entered against anyone in error, and Plaintiff does not seek to reverse or modify any judgment of any state court.

13. Plaintiff does not seek to reverse, modify, or otherwise challenge any order of the United States Bankruptcy Court, and Plaintiff challenges only Defendants' reporting described herein.

## JURISDICTION AND VENUE

14. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1681 *et seq*.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that Defendants transact business in this District and a substantial portion of the acts giving rise to this action occurred in this District.

16. Plaintiff resides in this District.

## PARTIES

17. Plaintiff is an adult individual and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

18. Defendant Experian is a business entity doing business in the Southern District of Indiana.

19. Defendant Experian's registered agent address is: C T Corporation System, 334 North Senate Avenue, Indianapolis, IN 46204.

20. Defendant Experian regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and uses interstate commerce to prepare and/or furnish the reports.

21. Defendant Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

22. Defendant Equifax is a business entity doing business in the Southern District of Indiana.

23. Defendant Equifax's registered agent address is: Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN 46204.

24. Defendant Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and uses interstate commerce to prepare and/or furnish the reports.

25. Defendant Equifax is a “consumer reporting agency” as that term is defined by 15 U.S.C. § 1681a(f).

26. Defendant NewRez is a business entity doing business in the Southern District of Indiana.

27. Defendant NewRez’s registered agent address is: Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN 46204.

28. Defendant NewRez is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

29. Defendant Toyota is a business entity doing business in the Southern District of Indiana.

30. Defendant Toyota’s registered agent address is: C T Corporation System, 334 North Senate Avenue, Indianapolis, IN 46204.

31. Defendant Toyota is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

32. Unless otherwise indicated, the use of Defendants’ names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

33. Plaintiff is informed and believes and thereon alleges that all acts of corporate employees as hereinafter alleged were authorized or ratified by an officer, director, or managing agent of the corporate employer.

34. Plaintiff is informed and believes and, on that basis, alleges that at all times mentioned herein each Defendant was the principal, agent or employee and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which each respective Defendant is liable to Plaintiff for the relief prayed for herein.

**FACTUAL ALLEGATIONS**

35. Sometime in or before September 2020, Plaintiff obtained a mortgage loan on Plaintiff's home that is held and/or serviced by NewRez (the "NewRez Account").

36. Sometime in or before February 2023, Plaintiff purchased a vehicle that was financed by an auto loan held by Toyota (the "Toyota Account").

37. The NewRez Account and Toyota Account will be collectively referred to herein as the "Accounts".

38. On or about February 11, 2025, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the Southern District of Indiana. Plaintiff's case was assigned Case Number 25-00608-JJG-13 (the "Bankruptcy").

39. On or about September 9, 2025, Plaintiff's Chapter 13 Plan was confirmed.

40. Both the NewRez Account and the Toyota Account were identified in Plaintiff's Chapter 13 Plan as accounts to be paid outside of the bankruptcy plan and directly by Plaintiff to the respective creditors (NewRez and Toyota), rather than through the bankruptcy trustee or otherwise administered through the Bankruptcy.

41. This designation and treatment of the Accounts in the Bankruptcy means that the Accounts remain unaffected by the Bankruptcy, and the Chapter 13 Plan specifically notes that direct

pay secured creditors, such as NewRez and Toyota, are not paid through the Trustee conduit and a specific nonstandard provision applies to them.

42. Plaintiff's confirmed Chapter 13 Plan included a nonstandard provision that stated:

> For all creditors receiving direct pay payments outside the Trustee conduit as specified under 7 & 8(d) of this plan (direct pay), the original contract terms are not changed or modified. The payment due dates, application of payments, assessment of late fees and attorney fees, and balances owed are controlled by the original contract. The direct pay debts herein described shall not be subject to discharge unless this case is converted to a case under chapter 7, 11,12 or if the debtor files a motion to modify this Chapter 13 Plan under 11 U.S.C. §1329 changing the treatment of the specified creditor and or debt.

43. The NewRez Account and the Toyota Account would each be paid and administered outside of the Bankruptcy with the original contractual terms applying.

44. Pursuant to the terms of the confirmed Chapter 13 Plan, Plaintiff is required to pay Plaintiff's mortgage payments directly to NewRez.

45. Pursuant to the terms of the confirmed Chapter 13 Plan, Plaintiff is required to pay Plaintiff's auto loan payments directly to Toyota.

46. Pursuant to the terms of the confirmed Chapter 13 Plan, the Bankruptcy does not change the contractual relationship between Plaintiff and NewRez, and the original contractual terms control.

47. Pursuant to the terms of the confirmed Chapter 13 Plan, the Bankruptcy does not change the contractual relationship between Plaintiff and Toyota, and the original contractual terms control.

48. Pursuant to the terms of the confirmed Chapter 13 Plan, the NewRez Account will not be discharged in the Bankruptcy.

49. Pursuant to the terms of the confirmed Chapter 13 Plan, the Toyota Account will not be discharged in the Bankruptcy.

50. As a secured debt which will mature after the completion of the Bankruptcy, the NewRez Account is considered to be a "Long Term Debt Not Subject to Discharge" pursuant to 11 U.S.C. § 1322(b)(5) and 11 U.S.C. § 1328(a)(1).

51. As a result of the direct pay treatment of the NewRez Account and the nonstandard provision in Plaintiff's Chapter 13 Plan, the designation and treatment of the NewRez Account in the Bankruptcy means that the NewRez Account remains unaffected by the Bankruptcy as the mortgage is not subject to modification under 11 U.S.C. § 1322(b)(2).

52. Similarly, the direct pay treatment of the Toyota Account and the nonstandard provision identified above means the Toyota Account is excluded from payment through the trustee, and the original contractual terms between Plaintiff and Toyota control.

53. For creditors subject to the above-noted nonstandard provision in the confirmed Chapter 13 Plan, there is an obligation for those who choose to credit report to do so in conformity with the original contractual terms.

54. This means that creditors who credit report must report the balance of the account, along with the recent payment, payments made, and the current status of those payments.

55. NewRez received notice of the Chapter 13 Plan.

56. Toyota received notice of the Chapter 13 Plan.

57. Plaintiff has made monthly payments directly to NewRez on the NewRez Account.

58. Plaintiff has made monthly payments directly to Toyota on the Toyota Account.

59. Despite the confirmed Chapter 13 Plan, the NewRez Account and the Toyota Account were each reported without a balance, payment information, payment status, or payment history on Plaintiff's Experian and Equifax credit reports.

60. As a result, Defendants reported the Accounts on Plaintiff's credit reports in an inaccurate, incomplete, and/or materially misleading way.

61. Plaintiff's creditors and potential creditors have accessed Plaintiff's credit reports while the misreporting described herein was on Plaintiff's credit reports and were misinformed by Defendants about Plaintiff's creditworthiness.

***NewRez and Experian's Inaccurate, Incomplete, and/or Materially Misleading Reporting of the NewRez Account***

62. On or before February 16, 2026, NewRez and Experian were reporting numerous inaccurate, incomplete, and/or materially misleading remarks regarding the NewRez Account on Plaintiff's Experian credit report.

63. Upon information and belief, the NewRez Account was reported on Plaintiff's Experian credit report with no balance, no monthly payment amount, no amount paid, no payment status, and no payment history.

64. By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the NewRez Account, NewRez and Experian were incorrectly making it appear as if the NewRez Account did not have a balance or a positive payment status, and as if Plaintiff was not paying on the NewRez Account at all.

65. Instead, the NewRez Account reported as though it was closed, with no balance or recent payment information, when in fact Plaintiff was paying the NewRez Account directly to NewRez outside of the Bankruptcy in accordance with the original contractual terms.

66. It is inaccurate, incomplete, and/or materially misleading for NewRez and Experian to report any derogatory information which is inconsistent with the Orders entered by the Bankruptcy Court.

67. However, NewRez and Experian either reported or caused to be reported inaccurate, incomplete, and/or materially misleading information as discussed herein.

***Toyota and Experian's Inaccurate, Incomplete, and/or Materially Misleading Reporting of the Toyota Account***

68. On or before February 16, 2026, Toyota and Experian were reporting numerous inaccurate, incomplete, and/or materially misleading remarks regarding the Toyota Account on Plaintiff's Experian credit report.

69. Upon information and belief, the Toyota Account was reported on Plaintiff's Experian credit report with no balance, no monthly payment amount, no amount paid, no payment status, and no payment history.

70. By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the Toyota Account, Toyota and Experian were incorrectly making it appear as if the Toyota Account did not have a balance or a positive payment status, and as if Plaintiff was not paying on the Toyota Account at all.

71. Instead, the Toyota Account reported as though it was closed, with no balance or recent payment information, when in fact Plaintiff was paying the Toyota Account directly to Toyota outside of the Bankruptcy in accordance with the original contractual terms.

72. It is inaccurate, incomplete, and/or materially misleading for Toyota and Experian to report any derogatory information which is inconsistent with the Orders entered by the Bankruptcy Court.

73. However, Toyota and Experian either reported or caused to be reported inaccurate, incomplete, and/or materially misleading information as discussed herein.

***NewRez and Equifax's Inaccurate, Incomplete, and/or Materially Misleading Reporting of the NewRez Account***

74. On or before February 16, 2026, NewRez and Equifax were reporting numerous inaccurate, incomplete, and/or materially misleading remarks regarding the NewRez Account on Plaintiff's Equifax credit report.

75. Upon information and belief, the NewRez Account was reported on Plaintiff's Equifax credit report with no balance, no monthly payment amount, no amount paid, no payment status, and no payment history.

76. By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the NewRez Account, NewRez and Equifax were incorrectly making it appear as if the NewRez Account did not have a balance or a positive payment status, and as if Plaintiff was not paying on the NewRez Account at all.

77. Instead, the NewRez Account reported as though it was closed, with no balance or recent payment information, when in fact Plaintiff was paying the NewRez Account directly to NewRez outside of the Bankruptcy in accordance with the original contractual terms.

78. It is inaccurate, incomplete, and/or materially misleading for NewRez and Equifax to report any derogatory information which is inconsistent with the Orders entered by the Bankruptcy Court.

79. However, NewRez and Equifax either reported or caused to be reported inaccurate, incomplete, and/or materially misleading information as discussed herein.

***Toyota and Equifax's Inaccurate, Incomplete, and/or Materially Misleading Reporting of the Toyota Account***

80. On or before February 16, 2026, Toyota and Equifax were reporting numerous inaccurate, incomplete, and/or materially misleading remarks regarding the Toyota Account on Plaintiff's Equifax credit report.

81. Upon information and belief, the Toyota Account was reported on Plaintiff's Equifax credit report with no balance, no monthly payment amount, no amount paid, no payment status, and no payment history.

82. By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the Toyota Account, Toyota and Equifax were incorrectly making it appear as if the Toyota Account did not have a balance or a positive payment status, and as if Plaintiff was not paying on the Toyota Account at all.

83. Instead, the Toyota Account reported as though it was closed, with no balance or recent payment information, when in fact Plaintiff was paying the Toyota Account directly to Toyota outside of the Bankruptcy in accordance with the original contractual terms.

84. It is inaccurate, incomplete, and/or materially misleading for Toyota and Equifax to report any derogatory information which is inconsistent with the Orders entered by the Bankruptcy Court.

85. However, Toyota and Equifax either reported or caused to be reported inaccurate, incomplete, and/or materially misleading information as discussed herein.

***Plaintiff's Dispute to Experian***

86. On or about February 16, 2026, Plaintiff sent a letter to Experian to dispute NewRez and Experian's reporting of the NewRez Account, along with Toyota and Experian's reporting of the Toyota Account, on Plaintiff's Experian credit report pursuant to 15 U.S.C. § 1681i by

notifying Experian, in writing, of the incorrect, incomplete, and/or materially misleading credit information (the "Experian Dispute").

87. Specifically, Plaintiff explained in the Experian Dispute that the NewRez Account and the Toyota Account were not included in the Chapter 13 Bankruptcy and were being paid directly outside of the Bankruptcy.

88. Plaintiff requested that NewRez and Experian list the current balance and the ongoing payments Plaintiff was making on the NewRez Account.

89. Plaintiff also requested that Toyota and Experian list the current balance and the ongoing payments Plaintiff was making on the Toyota Account.

90. Reporting the NewRez Account and the Toyota Account accurately, completely, and in a way that is not materially misleading requires that each account show a balance, payment history, and payment status consistent with the original contract terms.

91. Plaintiff attached supporting documents to the Experian Dispute, including a copy of the Chapter 13 Plan and the Confirmation Order.

92. Upon information and belief, Experian received Plaintiff's Experian Dispute.

93. Upon receipt of the Experian Dispute, Experian was required to conduct reinvestigations into the NewRez Account and the Toyota Account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

94. Pursuant to 15 U.S.C. § 1681i, Experian had a duty to notify NewRez of Plaintiff's Experian Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's Experian Dispute for NewRez to review, to conduct a reasonable reinvestigation of the disputed information, and to correct the tradeline or delete it from Plaintiff's consumer file.

95. Upon information and belief, Experian sent NewRez notice of Plaintiff's Experian Dispute.

96. Upon information and belief, NewRez received notice of Plaintiff's Experian Dispute from Experian.

97. Pursuant to 15 U.S.C. § 1681s-2(b), NewRez had a duty to conduct an investigation with respect to the disputed information, and to modify or delete that information appropriately.

98. A reasonable reinvestigation and/or investigation by Experian and NewRez respectively would have indicated that they were reporting the NewRez Account inaccurately, incompletely, and/or in a materially misleading way.

99. However, after receipt of the Experian Dispute, Experian and NewRez continued to report inaccurate, incomplete, and/or materially misleading information on the NewRez Account on Plaintiff's Experian credit report.

100. Pursuant to 15 U.S.C. § 1681i, Experian had a duty to notify Toyota of Plaintiff's Experian Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's Experian Dispute for Toyota to review, to conduct a reasonable reinvestigation of the disputed information, and to correct the tradeline or delete it from Plaintiff's consumer file.

101. Upon information and belief, Experian sent Toyota notice of Plaintiff's Experian Dispute.

102. Upon information and belief, Toyota received notice of Plaintiff's Experian Dispute from Experian.

103. Pursuant to 15 U.S.C. § 1681s-2(b), Toyota had a duty to conduct an investigation with respect to the disputed information, and to modify or delete that information appropriately.

104. A reasonable reinvestigation and/or investigation by Experian and Toyota respectively would have indicated that they were reporting the Toyota Account inaccurately, incompletely, and/or in a materially misleading way.

105. However, after receipt of the Experian Dispute, Experian and Toyota continued to report inaccurate, incomplete, and/or materially misleading information on the Toyota Account on Plaintiff's Experian credit report.

***Plaintiff's Dispute to Equifax***

106. On or about February 16, 2026, Plaintiff sent a letter to Equifax to dispute NewRez and Equifax's reporting of the NewRez Account, along with Toyota and Equifax's reporting of the Toyota Account, on Plaintiff's Equifax credit report pursuant to 15 U.S.C. § 1681i by notifying Equifax, in writing, of the incorrect, incomplete, and/or materially misleading credit information (the "Equifax Dispute").

107. Specifically, Plaintiff explained in the Equifax Dispute that the NewRez Account and the Toyota Account were not included in the Chapter 13 Bankruptcy and were being paid directly outside of the Bankruptcy.

108. Plaintiff requested that NewRez and Equifax list the current balance and the ongoing payments Plaintiff was making on the NewRez Account.

109. Plaintiff also requested that Toyota and Equifax list the current balance and the ongoing payments Plaintiff was making on the Toyota Account.

110. Reporting the NewRez Account and the Toyota Account accurately, completely, and in a way that is not materially misleading requires that each account show a balance, payment history, and payment status consistent with the original contract terms.

111. Plaintiff attached supporting documents to the Equifax Dispute, including a copy of the Chapter 13 Plan and the Confirmation Order.

112. Upon information and belief, Equifax received Plaintiff's Equifax Dispute.

113. Upon receipt of the Equifax Dispute, Equifax was required to conduct reinvestigations into the NewRez Account and the Toyota Account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

114. Pursuant to 15 U.S.C. § 1681i, Equifax had a duty to notify NewRez of Plaintiff's Equifax Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's Equifax Dispute for NewRez to review, to conduct a reasonable reinvestigation of the disputed information, and to correct the tradeline or delete it from Plaintiff's consumer file.

115. Upon information and belief, Equifax sent NewRez notice of Plaintiff's Equifax Dispute.

116. Upon information and belief, NewRez received notice of Plaintiff's Equifax Dispute from Equifax.

117. Pursuant to 15 U.S.C. § 1681s-2(b), NewRez had a duty to conduct an investigation with respect to the disputed information, and to modify or delete that information appropriately.

118. A reasonable reinvestigation and/or investigation by Equifax and NewRez respectively would have indicated that they were reporting the NewRez Account inaccurately, incompletely, and/or in a materially misleading way.

119. However, after receipt of the Equifax Dispute, Equifax and NewRez continued to report inaccurate, incomplete, and/or materially misleading information on the NewRez Account on Plaintiff's Equifax credit report.

120. Pursuant to 15 U.S.C. § 1681i, Equifax had a duty to notify Toyota of Plaintiff's Equifax Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's Equifax Dispute for Toyota to review, to conduct a

reasonable reinvestigation of the disputed information, and to correct the tradeline or delete it from Plaintiff's consumer file.

121. Upon information and belief, Equifax sent Toyota notice of Plaintiff's Equifax Dispute.

122. Upon information and belief, Toyota received notice of Plaintiff's Equifax Dispute from Equifax.

123. Pursuant to 15 U.S.C. § 1681s-2(b), Toyota had a duty to conduct an investigation with respect to the disputed information, and to modify or delete that information appropriately.

124. A reasonable reinvestigation and/or investigation by Equifax and Toyota respectively would have indicated that they were reporting the Toyota Account inaccurately, incompletely, and/or in a materially misleading way.

125. However, after receipt of the Equifax Dispute, Equifax and Toyota continued to report inaccurate, incomplete, and/or materially misleading information on the Toyota Account on Plaintiff's Equifax credit report.

***NewRez, Toyota, and Experian's Continued Inaccurate, Incomplete, and/or Materially Misleading Reporting after the Experian Dispute***

126. Following NewRez, Toyota, and Experian's respective investigations/reinvestigations into the Experian Dispute, Plaintiff received dispute results from Experian dated April 3, 2026 (the "Experian Dispute Results").

127. On the Experian Dispute Results, Experian indicated that the NewRez Account and the Toyota Account had been "Updated".

128. However, despite Experian's representation that the Accounts had been updated, NewRez and Experian continued to report the NewRez Account on the Experian Dispute Results in the same inaccurate, incomplete, and/or materially misleading way—with no balance, no monthly payment amount, no payment status, and no payment history.

129. Likewise, Toyota and Experian continued to report the Toyota Account on the Experian Dispute Results in the same inaccurate, incomplete, and/or materially misleading way—with no balance, no monthly payment amount, no payment status, and no payment history.

130. Whatever was purportedly modified on the Accounts did not correct any of the inaccurate, incomplete, and/or materially misleading information Plaintiff identified in the Experian Dispute.

131. In effect, NewRez, Toyota, and Experian verified as accurate each of the items Plaintiff had disputed and requested be corrected in the Experian Dispute.

132. NewRez and Experian's reporting of the NewRez Account on the Experian Dispute Results was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the NewRez Account was negative, that no balance was owed or recent monthly payment had been made, and that Plaintiff had not made any payments on the NewRez Account since the Bankruptcy was filed.

133. Toyota and Experian's reporting of the Toyota Account on the Experian Dispute Results was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the Toyota Account was negative, that no balance was owed or recent monthly payment had been made, and that Plaintiff had not made any payments on the Toyota Account since the Bankruptcy was filed.

134. NewRez, Toyota, and Experian's continued inaccurate, incomplete, and/or materially misleading reporting, and failures to investigate or correct the information on the Accounts, were problematic because Plaintiff's Experian Dispute included relevant supporting documents—including the Chapter 13 Plan and the Confirmation Order—which, upon information and belief, NewRez, Toyota, and Experian chose to ignore.

135. What should have been positive accounts with recent payment and balance information were instead reporting as negative accounts.

***NewRez, Toyota, and Equifax's Continued Inaccurate, Incomplete, and/or Materially Misleading Reporting after the Equifax Dispute***

136. Following NewRez, Toyota, and Equifax's respective investigations/reinvestigations into the Equifax Dispute, Plaintiff received dispute results from Equifax dated April 3, 2026 (the "Equifax Dispute Results").

137. On the Equifax Dispute Results, Equifax indicated that the NewRez Account and the Toyota Account had been "modified".

138. However, despite Equifax's representation that the Accounts had been modified, NewRez and Equifax continued to report the NewRez Account on the Equifax Dispute Results in the same inaccurate, incomplete, and/or materially misleading way—with no balance, no monthly payment amount, no payment status, and no payment history.

139. Likewise, Toyota and Equifax continued to report the Toyota Account on the Equifax Dispute Results in the same inaccurate, incomplete, and/or materially misleading way—with no balance, no monthly payment amount, no payment status, and no payment history.

140. Whatever was purportedly updated on the Accounts did not correct any of the inaccurate, incomplete, and/or materially misleading information Plaintiff identified in the Equifax Dispute.

141. In effect, NewRez, Toyota, and Equifax verified as accurate each of the items Plaintiff had disputed and requested be corrected in the Equifax Dispute.

142. NewRez and Equifax's reporting of the NewRez Account on the Equifax Dispute Results was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the NewRez Account was negative, that no balance was owed or recent

monthly payment had been made, and that Plaintiff had not made any payments on the NewRez Account since the Bankruptcy was filed.

143. Toyota and Equifax's reporting of the Toyota Account on the Equifax Dispute Results was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the Toyota Account was negative, that no balance was owed or recent monthly payment had been made, and that Plaintiff had not made any payments on the Toyota Account since the Bankruptcy was filed.

144. NewRez, Toyota, and Equifax's continued inaccurate, incomplete, and/or materially misleading reporting, and failures to investigate or correct the information on the Accounts, were problematic because Plaintiff's Equifax Dispute included relevant supporting documents—including the Chapter 13 Plan and the Confirmation Order—which, upon information and belief, NewRez, Toyota, and Equifax chose to ignore.

145. What should have been positive accounts with recent payment and balance information were instead reporting as negative accounts.

***Defendants' Ongoing Inaccurate, Incomplete, and/or Materially Misleading Reporting***

146. On Plaintiff's Experian credit report dated October 14, 2026—several months after the Experian Dispute—the NewRez Account and the Toyota Account each continued to report in an inaccurate, incomplete, and/or materially misleading way without balance, recent payment, payment history, or payment status information, and with continued bankruptcy remarks.

147. On Plaintiff's Equifax credit report dated October 14, 2026—several months after the Equifax Dispute—the NewRez Account and the Toyota Account each continued to report in an inaccurate, incomplete, and/or materially misleading way without balance, recent payment, payment history, or payment status information, and with continued bankruptcy remarks.

***The Impact of Inaccurate or Misleading Information on Consumer Reports***

148. A "Consumer Report", as defined by 15 U.S.C. § 1681a(d)(1), impacts a consumer's eligibility for:

i. credit or insurance to be used primarily for personal, family, or household purposes;

ii. employment purposes; or

iii. any other purpose authorized under section 1681b.

149. As a result, the information held within a consumer report impacts not only a consumer's credit worthiness, rating, and capacity, but also the character, general reputation, and personal characteristics of the consumer.

150. A Federal Trade Commission study mandated by Congress on credit report accuracy ("FTC Study") found that one in five consumers had an error on at least one of their three major credit reports (Equifax, Experian, and Trans Union), with some consumers experiencing inaccuracies that can depress credit scores by over 100 points. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

151. The FTC Study found that the types of errors on consumer reports could lead to consumers paying more for products such as auto loans and insurance. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

***Credit Scoring***

152. The Fair Isaac Corporation credit risk scoring system, also known as "FICO", is a ubiquitous credit scoring system and utilizes data reported by credit reporting agencies. *See* https://www.myfico.com/credit-education/credit-scores/.

153. Defendants' inaccurate, incomplete, and/or materially misleading reporting has caused Plaintiff to suffer from reduced FICO credit scores.

154. The Fair Isaac Corporation uses the data in consumer reports to calculate credit scores that it assigns to consumers.

155. The term "credit score" is a numerical value or a categorization used to predict the likelihood of certain credit behaviors, including default. *See* http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf.

156. FICO scores are calculated from credit data in a consumer's credit report that are arranged in five main categories. Those categories are identified and weighted as follows: payment history accounts for 35% of a consumer's FICO score; debt/amounts owed accounts for 30% of a consumer's FICO score; age/length of credit history accounts for 15% of a consumer's FICO score; new credit/recent inquiries accounts for 10% of a consumer's FICO score; and mix of accounts/types of credit accounts for 10% of a consumer's FICO score. *See* https://www.myfico.com/credit-education/whats-in-your-credit-score/.

157. A consumer's credit score impacts that consumer's cost of credit (e.g., interest rates, fees, etc.), availability of credit, ratings for insurance products, and even unsolicited credit offers, such as the opportunity to refinance a mortgage at a lower interest rate, extend financing periods, lower rate auto loans, and even zero-percent financing credit offers for in-store credit lines.

158. Inaccurate, incomplete, and/or incorrect credit reporting often results in a lower FICO (and other credit scoring model) scores, thus creating higher costs of credit for the consumer, diminished opportunities, and less purchasing power.

159. Here, the inaccurate, incomplete, and/or materially misleading reporting of the NewRez Account and Toyota Account adversely affects Plaintiff's FICO scores as Plaintiff's credit reports make it appear as though each account is negative, and that Plaintiff had not been paying on either account at all.

160. There is no established rule or threshold for classifying the significance of a credit score change as minor or major because the impact of a change in score is dependent on the current score, i.e., a one-point change in credit score that moves the consumer from one risk tier to the next may have a large impact on the consumer's ability to receive credit, the type of credit, or rates of that credit that a consumer may receive.

161. Consistent with the FTC Study, the Fair Isaac Corporation states that inaccurate or incorrect information on a consumer's credit report can hurt their score. *See* https://www.myfico.com/credit-education/questions/fix-errors-on-credit-report/.

***Defendants' Violations of the FCRA and Plaintiff's Damages***

162. It is inaccurate, incomplete, and/or materially misleading to report an account does not have a balance when it does in fact have a balance.

163. It is inaccurate, incomplete, and/or materially misleading to report an account does not have any payments made upon it when the consumer is in fact making payments on the account.

164. It is inaccurate, incomplete, and/or materially misleading to not report that an account has a positive payment status.

165. It is inaccurate, incomplete, and/or materially misleading to suppress positive and accurate account balance, payment data, and payment status information.

166. It is inaccurate, incomplete, and/or materially misleading to report an account is closed when it is open, and a consumer is paying on it as agreed.

167. It is inaccurate, incomplete, and/or materially misleading to report an account without balance and payment information when the consumer is paying on the account directly to the creditor, outside of a Chapter 13 bankruptcy, in conformity with the original contractual terms.

168. As evidenced by Experian's failure to report accurate and complete information on the NewRez Account and Toyota Account—despite having notice that the respective accounts in fact had a balance, payment information, and positive payment status—Experian failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

169. Experian either ignored or failed to review all relevant information on the NewRez Account and Toyota Account and thus failed to ensure maximum possible accuracy of the information concerning the individual about whom the report relates.

170. As evidenced by Equifax's failure to report accurate and complete information on the NewRez Account and Toyota Account—despite having notice that the respective accounts in fact had a balance, payment information, and positive payment status—Equifax failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

171. Equifax either ignored or failed to review all relevant information on the NewRez Account and Toyota Account and thus failed to ensure maximum possible accuracy of the information concerning the individual about whom the report relates.

172. Additionally, as evidenced by the inaccurate, incomplete, and/or materially misleading re-reporting after Plaintiff sent written disputes identifying the inaccurate, incomplete, and/or

materially misleading information related to the NewRez Account and Toyota Account—and by Experian's and Equifax's dispute results that purported to modify or update the Accounts while leaving every disputed inaccuracy in place—Defendants, upon receipt of Plaintiff's disputes, failed to conduct reasonable reinvestigations and/or investigations with respect to the disputed information as required by 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

173. Defendants failed to review all relevant information provided by Plaintiff in the disputes, as required by and in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

174. Due to Defendants' failure to reasonably investigate and/or reinvestigate, Defendants further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b), thereby causing continued reporting of inaccurate, incomplete, and/or materially misleading information in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

175. By reporting inaccurate, incomplete, and/or materially misleading account information after notice and confirmation of their errors, Defendants failed to take the appropriate measures as required under 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

176. Defendants' inaccurate, incomplete, and/or materially misleading reporting on the NewRez Account and Toyota Account—in light of their knowledge of the positive data they could report on the respective accounts—was willful. Plaintiff is, accordingly, eligible for statutory damages.

177. Reckless disregard of a requirement of the FCRA qualifies as a willful violation of the FCRA within the meaning of § 1681n(a). *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007).

178. Based upon Defendants' knowledge of each respective account and the data the Defendants possessed on each account, even if Defendants could claim they did not willfully violate the

FCRA, their conduct was at the very least done with reckless disregard of their obligations under the FCRA.

179. Plaintiff made a commitment to pay Plaintiff's debts as agreed in bankruptcy in the hope of obtaining a fresh start and better credit, but now Plaintiff worries the inaccurate, incomplete, and/or materially misleading information concerning the NewRez Account and Toyota Account could prevent Plaintiff from securing that fresh start.

180. Defendants' inaccurate, incomplete, and/or materially misleading reporting has caused Plaintiff to suffer actual damages, including, without limitation: fear of credit denials, damage to Plaintiff's creditworthiness, damage to Plaintiff's credit reputation, humiliation, frustration, and emotional distress.

181. Upon information and belief, Plaintiff's Experian and Equifax credit reports were published to third parties while the inaccurate, incomplete, and/or materially misleading information on the NewRez Account and Toyota Account was reporting.

182. Instead of those third parties seeing the NewRez Account and Toyota Account as positive accounts that Plaintiff is paying on, the NewRez Account and Toyota Account instead appeared as negative accounts without any payment data. This inaccurate, incomplete, and/or materially misleading information was published to those third parties who were thereby misinformed about Plaintiff's creditworthiness.

183. Defendants thus caused Plaintiff a reputational harm akin to defamation.

184. Plaintiff has suffered ongoing irritation, frustration, humiliation, and embarrassment knowing that despite working hard to make on-time payments, current and potential lenders have viewed Plaintiff's credit reports that fail to reflect Plaintiff's payments on the NewRez Account and the Toyota Account.

185. Upon information and belief, while the inaccurate, incomplete, and/or materially misleading information concerning the NewRez Account and Toyota Account appeared on Plaintiff's credit reports, Plaintiff was denied credit from Carvana, Bank of America, and Microcenter, among other denials.

186. Upon information and belief, while the inaccurate, incomplete, and/or materially misleading information concerning the NewRez Account and Toyota Account appeared on Plaintiff's credit reports, Plaintiff was offered credit from Webbank and Fortiva, among others, but on terms less favorable than Plaintiff would have been offered had the reporting on the NewRez Account and Toyota Account been accurate.

187. While the inaccurate, incomplete, and/or materially misleading information concerning the NewRez Account and Toyota Account appeared on Plaintiff's credit reports, Plaintiff avoided seeking credit for a security fence for his children and needed car repairs for fear of being denied and hurting Plaintiff's credit score further.

188. Defendants' inaccurate, incomplete, and/or materially misleading reporting on the NewRez Account and Toyota Account after Plaintiff requested a correction has caused Plaintiff to become irritable at home, suffer nausea, and have aggravated Plaintiff's high blood pressure.

189. Defendants' inaccurate, incomplete, and/or materially misleading reporting has caused Plaintiff to expend time on Plaintiff's attempts get Defendants to correct the reporting.

190. By reporting inaccurate, incomplete, and/or materially misleading account information, Defendants' acts and omissions have caused in the illegitimate suppression of Plaintiff's FICO credit score and other credit rating model scores.

191. Creating the false impression that the NewRez Account and Toyota Account were negative instead of positive creates a material risk that Plaintiff would be denied credit, receive less

favorable credit treatment than Plaintiff otherwise would, or receive other unfavorable treatment than Plaintiff otherwise would, from any viewer of Plaintiff's credit reports that is engaged in judgment-based lending.

**FIRST CAUSE OF ACTION**
**FCRA - 15 U.S.C. § 1681 *et seq*.**

192. Plaintiff repeats, re-alleges, and incorporates by reference all above paragraphs.

193. The foregoing acts and omissions constitute numerous and multiple violations of the FCRA, including, but not limited to 15 U.S.C. § 1681e(b) as to Experian and Equifax.

194. Defendants Experian and Equifax's acts and omissions were in violation of 15 U.S.C. § 1681i as well.

195. Defendants NewRez and Toyota's acts and omissions were in violation of 15 U.S.C. § 1681s-2(b).

196. The above-described violations by Defendants were willful, allowing Plaintiff to recover under 15 U.S.C. § 1681n.

197. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages or statutory damages of not less than $100.00 and not more than $1,000.00, pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and costs together with reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) from each Defendant.

198. In the alternative, Defendants were negligent in their actions, which entitles Plaintiff to recover under 15 U.S.C. § 1681o.

199. As a result of each and every negligent violation of the FCRA, Plaintiff is entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and costs together with reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2), from each Defendant.

## REQUEST FOR A JURY TRIAL

200. Plaintiff is entitled to, and demands, a trial by jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

1. A declaratory judgment that Defendants' actions as discussed herein are unlawful;
2. Plaintiff's actual damages from each Defendant;
3. Statutory damages of not less than $100.00 and not more than $1,000.00 to Plaintiff, pursuant to 15 U.S.C. § 1681n(a)(1), from each Defendant;
4. Punitive damages from each Defendant, pursuant to 15 U.S.C. §1681n(a)(2);
5. An award of costs of litigation and reasonable attorneys' fees from each Defendant, pursuant to 15 U.S.C. § 1681o(a)(2) or 15 U.S.C. § 1681n(a)(3); and
6. Any other relief the Court may deem just and proper.

Dated: November 16, 2026

Respectfully Submitted,

By: *\/s/Richard J. Shea*

Richard J. Shea, Esq., # 21396-53
Sawin & Shea, LLC
4701 North Keystone, Suite 210
Indianapolis, IN 46205
Telephone: (317) 255-2600
Facsimile: (317) 255-2905
E-mail: rshea@sawinlaw.com
*Attorney for Plaintiff*